```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
SETH WESSLER,                                        :
                                                     :
                              Plaintiff,             :
                                                     :         MEMORANDUM & ORDER
            -against-                                :
                                                     :         1:19-CV-0385 (ENV) (RML)
UNITED STATES COAST GUARD and UNITED                 :
STATES DEPARTMENT OF HOMELAND                        :
SECURITY                                             :
                                                     :
                              Defendants.            :
----------------------------------------------------------------x
```

VITALIANO, D.J.

On January 18, 2019, Plaintiff Seth Wessler filed this action seeking declaratory and injunctive relief against defendants United States Coast Guard and the United States Department of Homeland Security (collectively, "the government"). Compl., Dkt. 1. Wessler alleges that the government infringed upon his First Amendment rights under the United States Constitution by denying him access to the names and dates of those arrested by the United States Coast Guard as part of its maritime drug enforcement operations. *Id.* at 6–11. On September 27, 2019, the government moved to dismiss the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Wessler failed to sufficiently plead a plausible claim for violation of his First Amendment rights. Defs.' Mot., Dkt. 14. For the reasons set forth below, the government's motion is granted.

### Background[1]

Wessler "is an investigative reporter based in New York and a Fellow with Type

---

[1] The background facts are drawn from the complaint and are deemed true for purposes of this

Investigations." Compl. ¶ 7. The United States Coast Guard ("Coast Guard") is a branch of the United States Armed Forces but operates under the Department of Homeland Security during peacetime. *Id.* at ¶ 8. Wessler asserts that, pursuant to the Maritime Drug Law Enforcement Act (the "MDLEA"), 46 U.S.C. § 70501 *et seq.*, "the United States Coast Guard . . . routinely interdict[s] small vessels in international waters for alleged drug trafficking."[2] *Id.* ¶ 2. Following interdiction, the Coast Guard arrests the individuals on board the suspected vessel and transfers them to a Coast Guard ship where they are photographed, questioned and detained. *Id.* ¶¶ 6–13. In some cases, Wessler claims, the Coast Guard holds individuals in custody for a period of weeks or months. *Id.* ¶ 14.

The crux of Wessler's complaint is that, despite contemporaneously cataloguing the names of the arrestees and the dates of their arrests, *id.* ¶ 19, the Coast Guard "makes no public disclosure that an arrest has been made, and typically provides no notification to family members of the [arrestees]." *Id.* ¶ 9. According to Wessler, ultimately, the Coast Guard will either decline to charge the arrestees and release them back to the countries to which their vessels are registered or will transfer them to the United States where they are "processed through Customs and Border Patrol, arraigned, and/or indicted for drug trafficking and other crimes." *Id.* ¶¶ 11–12.

---

motion, and all reasonable inferences are drawn in favor of plaintiff. *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). Also considered on the motion are any documents attached to or referenced in the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

[2] The MDLEA "makes it a federal crime to engage in certain specified drug trafficking activity '[w]hile on board a covered vessel.'" *United States v. Van Der End*, 943 F.3d 98, 102 (2d Cir. 2019) (quoting 46 U.S.C. § 70503(a)). The MDLEA defines "covered vessel" broadly, including as a vessel subject to the jurisdiction of the United States, which is further defined as, *inter alia*, "a vessel without nationality." *Id.* (quoting 46 U.S.C. § 70502(c)(1)(A)). This broad definition gives the United States the authority to interdict covered vessels even on international waters. *See United States v. Cuero*, 309 F. Supp. 3d 83, 85 (S.D.N.Y. 2017).

Presumably following leads he had developed, on November 15, 2018, Wessler submitted a written press request to the Coast Guard for, among other things, "a list of all individuals currently detained or held by the US Coast Guard as part of Operation Martillo . . . [and] the names and locations of the suspected smugglers detained with the assistance of the US Coast Guard LEDET team riding on the HMCS Edmonton on November 5, 2018." Compl. Ex. E, Dkt. 1-5, at 4–5. On November 23, 2018, the Coast Guard denied Wessler's request for information, stating that they were "precluded from releasing the names or locations of suspected drug smugglers as a matter of safety and security." *Id.* at 2. On January 18, 2019, Wessler initiated this action, seeking (1) a declaration that the First Amendment guarantees a right of access to "the names and dates of those arrested by the Coast Guard, including individuals arrested in international waters" pursuant to the MDLEA; (2) to have the government permanently enjoined to "make contemporaneously public the names of persons arrested by the Coast Guard and the dates of their arrest"; and (3) costs, including reasonable attorneys' fees. Compl. at 12.[3]

Standard of Review

Under Federal Rule of Civil Procedure 12(b), a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When reviewing such motions, a court "must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the [p]laintiff." *Anzelone v.*

---

[3] On June 15, 2020, Wessler filed a supplemental letter to report new factual developments, including that the risk of contracting Covid-19 is higher in enclosed spaces such as on cruise ships and other maritime vessels, and that President Trump announced in April that he would deploy Navy ships to the Caribbean and East Pacific to increase the interdiction of drug smugglers there. Ltr., Dkt. 18. The letter did not include, however, any additional legal authority to support Wessler's analysis.

*ARS Nat'l Servs., Inc.*, No. 2:17-CV-04815, 2018 WL 3429906 (E.D.N.Y. July 16, 2018). To survive such a motion, a complaint must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). Simply put, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Although a plaintiff need not provide "detailed factual allegations," *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964, the pleading rules demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1949.

## Discussion

Wessler's claim hinges upon the applicability in this context of what has generally been referred to as the "history and logic test" or "experience and logic test." *See Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8–9, 106 S. Ct. 2735, 2740, 92 L. Ed. 2d 1 (1986). This test is grounded in the Supreme Court's decision in *Richmond Newspapers*, in which the Court recognized a First Amendment public right of access to criminal trials. 448 U.S. 555, 580, 100 S. Ct. 2814, 2829, 65 L. Ed. 2d 973 (1980). The Supreme Court has since applied the test to other adjudicatory proceedings and related documents, such as the transcripts to preliminary hearings in a criminal prosecution. *Press-Enterprise*, 478 U.S. at 10–14.

The test itself involves two considerations: "whether the place and process have historically been open to the press and general public . . . . [and] whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* at 8. Although the history and logic test was developed in the context of criminal judicial proceedings,

4

Wessler urges the Court to apply that test here, in the context of the government's interdictions and detentions of suspected drug traffickers in international waters. Wessler argues that the history and logic test is one of general applicability, to be applied to all claims seeking a right of access to government information. Pl.'s Opp'n Mem., Dkt. 14-2, at 4–5. And maintaining that the history and logic test applies here, Wessler claims that he has sufficiently pleaded facts which, if accepted as true, establish both prongs of the test. *Id.* at 1.

In opposition, the government contends that *Richmond Newspapers* was a narrow exception to the doctrine established in an older case, *Houchins v. KQED, Inc.*, 438 U.S. 1, 98 S. Ct. 2588, 57 L. Ed. 2d 553 (1978). In that case, the Supreme Court denied the press a First Amendment right of access to the Alameda County Jail over and above that accorded to the general public. *Id.* at 15–16. In so holding, a plurality of the Supreme Court declared that the "Constitution itself is neither a Freedom of Information Act nor an Official Secrets Act" and "[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control." *Id*. at 14–15. Seeking refuge in this precedent, the government argues that the history and logic test applies in only the narrow context of adjudicative proceedings and their related judicial documents, and does not, as a matter of law, extend to the contemporaneous arrest records sought here.[4] Defs.' Mem., Dkt. 14-1 at 5–7. Wessler argues the inverse—that *Houchins* was a narrow holding, and that it has been limited by the doctrine established in *Richmond*

---

[4] The government also argues that the Coast Guard's seizures of suspected drug traffickers in international waters do not, as Wessler alleges in his Complaint, qualify as "arrests," but should be instead treated as lawful "detentions." Defs.' Mem. at 5. However, the point at which an investigative detention ripens into an arrest is a question of fact. *United States v. Tehrani*, 49 F.3d 54, 58 (2d Cir. 1995). Therefore, the Court must take Wessler's allegations regarding the nature of the seizures as true. *See Anzelone*, 2018 WL 3429906, at *2.

*Newspapers*.  Pl.'s Opp'n Mem. at 5.

At the outset of analysis, the Court rejects Wessler's contention that the history and logic test governs all cases seeking a right of access to government information.  The Supreme Court has never explicitly overruled *Houchins* or indicated that it was no longer good law.  On the contrary, the Supreme Court has since intimated that *Houchins* remains good law.  *See L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 40, 120 S. Ct. 483, 489, 145 L. Ed. 2d 451 (1999) (citing *Houchins* to declare that California was not required, under the First Amendment, to make arrest information publicly accessible at all).  Multiple circuits, including the Second Circuit, have also treated *Houchins* as good law.  *See Ladeairous v. Attorney General of N.Y.*, 592 Fed. App'x. 47, 48 (2d Cir. 2015) (citing *Houchins* in affirming a district court's dismissal of a First Amendment right of access claim); *see also Phillips v. DeWine*, 841 F.3d 405, 418 (6th Cir. 2016) (noting that the Sixth Circuit "has treated *Houchins* as good law, . . . which, of course, it is, having never been overruled by the Supreme Court" (internal citations omitted)); *Flynt v. Rumsfeld*, 355 F.3d 697, 703–04 (D.C. Cir. 2004) (denying the press a right of access to U.S. troops engaged in combat operations, holding that *Houchins* applies outside of the criminal proceeding context, and rejecting a "wholesale adoption of a *Richmond Newspapers* analysis in every case involving requests for access to government activities or information").

But, having determined that the history and logic test does not govern every right of access claim, the Court must still decide whether it governs here.  It does not.  In fact, hobbling Wessler's claim right out of the gate, the Supreme Court has flatly declared, albeit in dicta, that a state government "could decide not to give out arrestee information at all without violating the First Amendment."  *L.A. Police Dep't*, 528 U.S. at 40–41 (proceeding to reject a publishing company's challenge to a California statute, which limited access to information about

individuals recently arrested by the Los Angeles Police Department). This statement alone casts grave doubt on the claim Wessler asserts here.[5]

Additionally, although the Second Circuit has yet to rule on the issue, other circuit courts have held that *Richmond Newspapers* does not apply in the arrest-record context. In particular, in *Center for National Security Studies v. U.S. Department of Justice*, the D.C. Circuit denied plaintiffs access to information relating to the investigation into the 9/11 terrorist attacks, including the names of detainees, and the dates and locations of their detentions. 331 F.3d 918, 933–36 (D.C. Cir. 2003). The court held that "[t]he narrow First Amendment right of access to information recognized in *Richmond Newspapers* does not extend to non-judicial documents that are not part of a criminal trial, such as the investigatory documents at issue here," and made clear that it would not "convert the First Amendment right of access to criminal judicial proceedings into a requirement that the government disclose information compiled during the exercise of a quintessential executive power—the investigation and prevention of terrorism."[6] *Id.* at 934–35.

---

[5] Wessler argues that *L.A. Police Department* is inapplicable because that case involved the commercial speech doctrine, not the First Amendment right of access. Pl.'s Opp'n Mem. at 8. This argument ignores that, in rejecting respondent's facial challenge under the commercial speech doctrine, the Supreme Court suggested the case was properly understood as a right of access case. 528 U.S. at 40 (observing that the case was "not a case in which the government [was] prohibiting a speaker from conveying information that the speaker already possesse[d] . . . [but instead was] nothing more than a governmental denial of access to information in its possession"). Indeed, all nine justices concurred in the majority's denial of a First Amendment right of access to arrestee information. *Id.* at 45 (Stevens, J., dissenting) (agreeing with the majority that the statute was a restriction on access to government information and that the First Amendment placed no obligation on California to give out arrestee information at all).

[6] Wessler argues forcefully in his brief that *Center for National Security Studies* is distinguishable on the facts, noting that there "the government had already released the detainees' names, the detainees had access to counsel and were free to communicate with the public, and the case was litigated in the immediate aftermath of the worst terrorist attack in this country's history . . . ." Pl.'s Opp'n Mem. at 9. While Wessler overstates the differences between the two cases—for example, in *Center for National Security Studies*, the government had not in fact released all of the detainees' names—whether overstating or accurately stating

7

Finally, a diverse chorus of district courts have considered similar issues and have held that there is no First Amendment right to the kind of information Wessler seeks here. *See Oklahoma Observer v. Patton*, 73 F. Supp. 3d 1318, 1324–25 (W.D. Okla. 2014) (in holding that the history and logic test does not apply to access to execution viewings, stating that it does not apply "outside the criminal adjudication process"); *Sullo & Bobbitt, PLLC v. Abbott*, No. 3:11-CV-1926, 2012 WL 2796794, at *13 (N.D. Tex. 2012) (holding that there is a qualified First Amendment right of access "to court records and documents" if such access satisfies the history and logic test, but rejecting a right of access to "police citations" that "are used to create the criminal court case" because there were no allegations that such records had been filed in court); *see also Doe v. Briley*, 511 F. Supp. 2d 904, 926 (M.D. Tenn. 2007) (citing *L.A. Police Department* to note that "the Supreme Court has been very clear that the First Amendment does not grant a right of access to arrest records").

Silence at times, and this is one of those times, speaks loudly. Wessler does not cite, nor has the Court found, any authority for the proposition that the history and logic test should be applied in the context of arrest records.[7] The Second Circuit has held that, under *Richmond*

---

facts, it matters little. The court gave absolutely no indication that, if the facts were there as they are here, there would be a right of access, and in fact strongly suggested the opposite. *Center for Nat'l Sec. Studies*, 331 F.3d at 935 ("[N]either this Court nor the Supreme Court has ever *indicated* that it would apply the *Richmond Newspapers* test to anything other than criminal judicial proceedings. Indeed, there are no federal court precedents requiring, under the First Amendment, disclosure of information compiled during an Executive Branch investigation, such as the information sought in this case." (emphasis in original)).

[7] The only case Wessler cites that comes close to supporting his contention that the test applies to information untethered to a proceeding of some kind is *Cal-Almond, Inc. v. U.S. Department of Agriculture*, 960 F.2d 105 (9th Cir. 1992). In that case, the Ninth Circuit considered an almond handler's claim for access to a referendum's voter list held by the U.S. Department of Agriculture under both the First Amendment and the Agricultural Marketing Agreement Act. *Id.* at 109–10. Finding that the "Agricultural Marketing Agreement Act itself can reasonably be interpreted to require public access to the referendum's voter list," the court proceeded to apply

8

*Newspapers* and its progeny, "it is well established that the public and the press have a 'qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.'" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)). The Second Circuit has extended this right of access to civil trials, pretrial suppression hearings, plea agreements and plea hearings, information on the payment of court-appointed counsel, bail hearings, live *voir dire* proceedings, sentencing hearings, and even administrative hearings. *N.Y. Civil Liberties Union v. NYC Transit Auth.*, 684 F.3d 286, 297–98, 303 (2d Cir. 2012) (citing cases). The Second Circuit has also applied the history and logic test to wiretap applications but declined to hold that a First Amendment right of access to those documents existed. *See In re New York Times Co.*, 577 F.3d 401, 410–11 (2d Cir. 2009). These more expansive cases, however, do not support Wessler's claim. In all of these cases, there is a clear nexus to adjudicative proceedings or judicial documents. In fact, in all of the cases Wessler relies on too, there is a nexus either to a proceeding of some kind or its related documents. *See N.Y. Civil Liberties Union*, 684 F.3d at 303 (administrative hearings regarding transit citations); *United States v. Wecht*, 537 F.3d 222, 235 (3d Cir. 2008) (names of trial jurors and prospective jurors prior to empanelment); *United States v. Miami Univ.*, 294 F.3d 797, 820–24 (6th Cir. 2002) (university records related to a

---

the history and logic test to see whether it should invoke the doctrine of constitutional avoidance. *Id.* Upon finding that the history and logic test would likely have been met and would have raised a serious constitutional question, it declined to decide the issue under the First Amendment and held that the Agricultural Marketing Agreement Act itself provided access. *Id.* Although the Ninth Circuit appeared to apply the history and logic test in a context wholly divorced from a proceeding of any kind, if it intended to do so, the decision would be, at best, an outlier and unpersuasive. *Cal-Almond*, aside from being non-binding on courts in this circuit, not only fails to address access to arrest records, but also fails to provide any analysis whatsoever on when, if ever, the history and logic test should apply outside of the context of a governmental proceeding. Any persuasive value *Cal-Almond* has in favor of Wessler's position is, therefore, outweighed by the authority tipping the scales against it.

student's school disciplinary proceeding for criminal activities); *Cal. First Amendment Coalition*, 299 F.3d 868, 877 (9th Cir. 2002) (state executions); *Balt. Sun Co. v. Goetz*, 886 F.2d 60, 64–65 (4th Cir. 1989) (search warrant affidavits).[8] Without grounding in precedent or persuasive argument to support his novel claim, Wessler's complaint must be dismissed.

## Conclusion

In line with the foregoing, Wessler has failed to state a plausible claim for a right of access to the names and dates of the arrests of individuals detained by the Coast Guard pursuant to its maritime drug law enforcement operation. Accordingly, the motion to dismiss is granted, and the complaint is dismissed. Since this determination rests on a question of law, any attempt at amendment would be futile, and, resultingly, dismissal is with prejudice.

The Clerk of Court is directed to enter judgment accordingly and close this case.

So Ordered.

Dated: Brooklyn, New York
August 31, 2020

/s/ENV
ERIC N. VITALIANO
United States District Judge

---

[8] The Court notes further that Wessler attempts to support his view that the history and logic test attaches broadly through quotations that are, at best, misleading. For example, Wessler claims that "[i]f the 'tests of experience and logic' are satisfied, 'a qualified First Amendment right of public access attaches.'" Pl.'s Opp'n Mem. at 6 (quoting *Press-Enterprise*, 478 U.S. at 9). In fact, the full quotation reads: "If the particular *proceeding* in question passes these tests of experience and logic, a qualified First Amendment right of public access attaches." *Press-Enterprise*, 478 U.S. at 9 (emphasis added).